IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**EDWARD J. COLE, et al.,**

    **Plaintiffs,**

  v.                                    Civil Action 2:20-cv-829

                                          Magistrate Judge Jolson

**CHRIS A. COVERSTONE, et al.,**

    **Defendants.**

## OPINION AND ORDER

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 14), is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 8) and Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 11).

Up front, the Court notes that Defendants take issue not with Plaintiffs' request to amend the pleading but with the proposed allegations themselves. (*See generally* Doc. 16). Indeed, Defendants' only challenge to amendment is futility. (*See id.*). According to Defendants, Plaintiffs' allegations fail to state a claim for relief and should be dismissed as a result. (*See id.*).

Given this posture, the Court finds that the most just way to resolve this matter is to **GRANT** Plaintiffs' Motion for Leave to Amend (Doc. 11) and construe Defendants' opposition to Plaintiffs' Motion for Leave to Amend (Doc. 16) as a Motion to Dismiss the Second Amended Complaint. *See, e.g.*, *Owens v. BAC Home Loans Servicing, L.P.*, No. CIV.A. H-11-2742, 2012 WL 1494231, at *2 (S.D. Tex. Apr. 27, 2012) (construing defendants' futility arguments in opposition to plaintiffs' motion for leave to amend as a motion to dismiss and noting that the same legal standard applies to futility arguments and Rule 12(b)(6) motions to dismiss).

This means that the Second Amended Complaint "replaces" Plaintiffs' earlier pleading (Doc. 3) and renders Defendants' Motion to Dismiss (Doc. 8) "moot." *ComputerEase Software, Inc. v. Hemisphere Corp.*, 2007 WL 852103, at *1 (S.D. Ohio Mar. 19, 2007); *see also Fleming v. Tinnell*, No. 3:19-CV-00125-RGJ, 2020 WL 1268348, at *1 (W.D. Ky. Mar. 16, 2020) (citations omitted) ("Because the Court is permitting [plaintiff] to amend his complaint, that amended complaint will subsume the allegations in the original complaint. As a result, the Motion to Dismiss . . . [is] denied as moot."). Consequently, Defendants' Motion to Dismiss (Doc. 8) is **DENIED without prejudice as moot**.

As for the construed Motion to Dismiss (Doc. 16), it is **GRANTED in part** and **DENIED in part**. Specifically, the Motion is **GRANTED** as to Defendant Jerad White, and the claims against him are **DISMISSED without prejudice**. The Motion is otherwise **DENIED**. Within fourteen (14) days, Plaintiffs are **ORDERED** to file a proposed third amended complaint consistent with this Opinion and Order and without claims against Defendant White, who has been dismissed without prejudice.

Finally, the discovery stay is **LIFTED**, and the parties are **DIRECTED** to meet and confer and submit a proposed scheduling order within fourteen (14) days of this Opinion and Order.

I. BACKGROUND

This is a Fourth Amendment case arising from a traffic stop in Tuscarawas County, Ohio. The following allegations are from Plaintiffs' Second Amended Complaint. (Doc. 11-1). On November 12, 2018, Defendant Ohio State Highway Patrol Officer Chris Coverstone pulled Plaintiffs over on Interstate Route 70 for driving five miles over the speed limit. (*Id.*, ¶¶ 12–13). At that time, Plaintiff Edward Cole was driving his brother Plaintiff Evan Cole's 2008 Mercedes Benz sedan. (*Id.*, ¶ 12). Defendant Coverstone approached the vehicle and asked Edward Cole for

2

his driver's license, registration, and proof of insurance. (*Id.*, ¶ 14). Defendant Coverstone also searched for but found no outstanding warrants against either Plaintiff. (*Id.*, ¶ 15). Still, Defendant Coverstone instructed Plaintiffs to step out of the vehicle and began questioning them. (*Id.*, ¶ 16). Specifically, Defendant Coverstone pressed Plaintiffs about illegal narcotics, and they denied the accusations. (*Id.*, ¶ 17). Nevertheless, Defendant Coverstone detained Plaintiffs and called for the K-9 unit. (*Id.*, ¶ 19).

Defendant Ohio State Highway Patrol Trooper Joseph Weeks arrived in the K-9 cruiser, and Defendant Coverstone instructed him to have the police dog, "Ryo," sniff the vehicle for illegal narcotics. (*Id.*, ¶¶ 19–20). Defendant Coverstone "alleged to the plaintiffs that the dog 'alerted and indicated to the vehicle.'" (*Id.*, ¶ 23). So Defendant Coverstone handcuffed Plaintiffs and detained them in separate police vehicles. (*Id.*, ¶¶ 25, 27). Defendants Coverstone and Weeks then proceeded to search the vehicle but found nothing. (*Id.*, ¶ 29). Yet they still had Plaintiffs' vehicle towed to "a garage owned by Fudge's Auto Service in Eaton, Ohio." (*Id.*, ¶ 30). They transported Plaintiffs to the garage and "handcuffed [them] to chairs inside the office." (*Id.*, ¶ 31).

At the garage, Defendants Coverstone and Weeks, along with Defendant Ohio State Highway Trooper Jerad White searched the vehicle for illegal narcotics. (*Id.*, ¶ 30). Ultimately, however, Defendants turned up nothing and released Plaintiffs and their vehicle. (*Id.*, ¶ 32).

Plaintiffs allege that Defendants unlawfully searched and seized them in violation of their Fourth and Fourteenth Amendment rights. (*Id.*, ¶¶ 33–40). In support, they assert that "Sgt. Coverstone and Tpr. Weeks extended the traffic stop beyond what was originally permissible since the defendants knew of no facts giving them reasonable suspicion for a dog sniff," (*id.*, ¶ 21), and that Defendants "confined and detained [them] against their will and deprived [them] of their

3

freedom to leave, (*id.*, ¶ 31). For relief, they each seek compensatory and punitive damages. (*Id.* at 9).

## II. STANDARD

As noted, Defendants' sole argument against amendment is futility. (*See* Doc. 16 at 1 (asserting that the proposed second amended complaint "suffers from the same failures as its predecessor"—it fails to state a claim for relief)). And, as a result, Defendants assert that Plaintiffs' claims should be dismissed. (*See, e.g.*, *id.* at 14 ("[The claims against Defendant White] [are] futile, should be rejected by the Court, and [Defendant] White should be dismissed from this action.")). So the Court has construed Defendants' opposition to Plaintiffs' Motion for Leave to Amend as a motion to dismiss. *See, e.g.*, *Owens*, 2012 WL 1494231, at *2 (construing defendants' futility arguments in opposition to plaintiffs' motion for leave to amend as a motion to dismiss and noting that the same legal standard applies to futility arguments and Rule 12(b)(6) motions to dismiss).

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Twombly*, 550 U.S. at 57. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (holding that Plaintiff must set forth

4

specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plaint statement" rule, the law "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted).

### III. DISCUSSION

Defendants argue that Plaintiffs' allegations "hit the elements necessary to claim Fourth Amendment violations, but fail to provide the factual support necessary to make those claims." (*Id*. at 5). In support, they make three main arguments: (1) "Plaintiffs' allegations fail to sufficiently allege [the] Troopers prolonged the traffic stop"; (2) "Plaintiffs' allegations are insufficient to show the dog's alert did not provide the Troopers with probable cause to seize them and search their vehicle"; and (3) "Plaintiffs fail to state a claim against Trooper White." (*See generally id*.). The Court addresses each in turn.

#### A. Prolongation of the Traffic Stop

To begin, Defendants assert that Plaintiffs have failed to allege facts showing that the use of the drug-detection dog unlawfully prolonged the traffic stop. (*Id*. at 6–8). The Court disagrees.

"[T]he permissible duration of a roadside seizure is tightly tethered to the mission of a traffic stop." *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020) (citing *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). Specifically, the "'tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission.'" *Lott*, 954 F.3d at 923 (quoting *Rodriguez*, 575 U.S. at 354). Relevant here, the mission of a traffic stop is to "ensur[e] that vehicles on the road are operated safely and responsibly." *Rodriguez*, 575 U.S. at 355 (citations omitted).

As part of that mission, officers make "'ordinary inquiries incident to [the traffic stop].'" *Id.* (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). These typically include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355 (citations omitted). So, in determining whether the duration of a traffic stop was lawful, courts apply a bright line rule: The traffic stop should take "the amount of 'time reasonably required to complete'" these routine tasks. *Id.* (quoting *Caballes*, 543 U.S. at 407). Importantly, "a dog sniff is not fairly characterized as part of the officer's traffic mission," and the use of a police dog may turn an otherwise lawful traffic stop into a constitutional violation. *Rodriguez*, 575 U.S. at 356.

The law is clear that, "where something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot," an officer may lawfully deploy a drug-detection dog at a routine traffic stop. *United States v. Zuniga*, 613 F. App'x 501, 507 (6th Cir. 2015) (internal quotations omitted). That is true "even if the initial purpose of the stop had been or could have been completed prior to the dog's free-air sniff of the vehicle[.]" *United States v. Smith*, No. CR 18-46-DLB-CJS, 2019 WL 1756279, at *4 (E.D. Ky. Apr. 19, 2019); *see also United States v. Rios*, 830 F.3d 403, 429 (6th Cir. 2016) (holding that, because the officers had "reasonable suspicion of drug activity" based on a tip, "the ten-minute delay between the beginning of the stop and the conclusion of the dog's sniff was reasonable in scope"); *United States v. Caldero-Calderon*, No. 2:18-CR-243, 2019 WL 1876997, at *6 (S.D. Ohio Apr. 26, 2019) (finding that the officer had reasonable suspicion to deploy the drug dog after "develop[ing] a reasonable suspicion that Defendants were engaged in illegal drug trafficking during the first few minutes of the stop").

But when law enforcement does not reasonably suspect criminal activity, the analysis is different. In that instance, law enforcement may deploy a drug-detection dog only if doing so would not "prolong[]—*i.e.*, add[] time to—the stop." *Rodriguez*, 575 U.S. at 357 (quotation marks and citation omitted). So, for example, if a typical traffic stop takes twenty minutes to complete, then law enforcement may constitutionally deploy a police dog during that twenty-minute period. *See, e.g.*, *Caballes*, 543 U.S. at 406 (affirming lower court's finding that officers did not unnecessarily prolong the stop where one officer "was in the process of writing a warning ticket" and the other officer "walked his dog around the respondent's car"). Anything longer is unconstitutional. This bright-line rule applies even where the delay for the canine sweep adds only "seven to eight minutes" to the traffic stop. *Rodriguez*, 575 U.S at 353.

And that is what Plaintiffs say happened here. They allege that Defendant Coverstone had already "concluded" his "normal traffic stop duties" when he called for the K-9 unit. (*Id.*, ¶ 20). They further allege that their "conduct gave Defendant Coverstone no reason to suspect that they were involved in criminal activity." (*Id.*, ¶ 19). "Nonetheless, Sgt. Coverstone detained [them] and called Tpr. Weeks to bring a police dog to the scene." (*Id.*). According to Plaintiffs, "[t]his extended the stop beyond the scope of what was originally permissible[.]" (*Id.*).

Defendants respond that Plaintiffs must do more at this stage. They want Plaintiffs to: (1) "clarify how they know Sgt. Coverstone made warrant checks or when he did so"; (2) "specify when Sergeant Coverstone informed Edward Cole that he would not be ticketed, or even if Mr. Cole actually gave up his driver's license or the other documents Sgt. Coverstone requested"; and (3) "allege approximately how long they were on the side of the highway before Trooper Weeks arrived and the canine alerted[.]" (Doc. 16 at 7).

7

Defendants' demands are too much for this stage of the case. Although these lines of inquiry may become relevant for ultimately resolving this case, Defendants cite no authority that Plaintiffs must make these particularized allegations to survive a motion to dismiss. This is so because case law is to the contrary. Whether a dog sniff unreasonably prolonged a traffic stop "is the type of circumstance-specific Fourth Amendment inquiry that, in the civil context, is generally reserved to the jury[.]" *Hernandez v. Boles*, 949 F.3d 251, 257 (6th Cir. 2020); *see also United States v. Baxter*, No. 4:17-CR-42-TRM-SKL, 2018 WL 1598950, at *6 (E.D. Tenn. Mar. 13, 2018), *report and recommendation adopted*, No. 4:17-CR-42, 2018 WL 1594778 (E.D. Tenn. Apr. 2, 2018) (quotation marks and citations omitted) ("To evaluate the reasonableness of a stop, a court considers the diligence of the officer. A court must conduct a fact-bound, context-dependent inquiry in each case to determine whether the totality of the circumstances surrounding the stop indicates that the duration of the stop as a whole . . . was reasonable."); *Davila v. N. Reg'l Joint Police Bd.*, No. 2:13-CV-070, 2016 WL 1252986, at *3 (W.D. Pa. Mar. 31, 2016) ("While it may indeed turn out, with the benefit of discovery, that [the officer] had probable cause or at least a reasonable basis to suspect [plaintiff] had violated some law other than that requiring her headlights to be on, the Court concludes that at this juncture, it is just too soon to tell as a factual matter."). So this case must proceed to discovery, and Defendants' Motion to Dismiss this claim is **DENIED**.

**B. Probable Cause to Search the Vehicle**

The same is true regarding Plaintiffs' allegations concerning probable cause. Defendants challenge Plaintiffs' "new conclusory allegations" regarding the police dog's training and reliability. (Doc. 16 at 8–12). They argue that Plaintiffs' formulaic assertions regarding the drug-detection dog's qualifications are without merit and that because a properly trained and reliable

8

drug-detection dog made a positive alert, they had probable cause to search every part of the vehicle. (*Id.* at 8–9).

The Court agrees with this general assertion of law, but Plaintiffs' allegations go beyond the dog's qualifications. Importantly, Plaintiffs also allege that, after the dog "sniffed [their] vehicle, Sgt. Coverstone *alleged* to the plaintiffs that the dog 'alerted and indicated to the vehicle'" and "falsely accused the defendants of unlawfully possessing cocaine." (Doc. 11-1, ¶ 23) (emphasis added). Plaintiffs further allege that they were later released because no drugs were found. (*Id.*, ¶ 32).

Construing these allegations in the light most favorable to Plaintiffs, as this Court must, Plaintiffs have alleged facts from which it could be reasonably inferred that the drug-detection dog did not positively alert to drugs in the vehicle. If that is true, the police dog did not supply probable cause to search the vehicle. *See, e.g.*, *Gass v. Murphy*, No. 3:11-CV-01584, 2012 WL 2115339, at \*5 (M.D. Pa. May 18, 2012), *report and recommendation adopted*, No. 3:11-CV-1584, 2012 WL 2115479 (M.D. Pa. June 11, 2012) (finding that, while a positive alert by a properly trained drug detection dog provides an officer probable cause to search the vehicle without warrant, plaintiff "sufficiently alleged facts from which it could reasonably be inferred" that the drug-detection dog did not positively alert to drugs in the vehicle and that defendant "falsely stated [the dog] had alerted").

Again, discovery may reveal otherwise. But Plaintiffs have pled enough to survive a motion to dismiss, and Defendants' Motion to Dismiss this claim is **DENIED**.

### C. Defendant White

The final argument this Court must consider is specific to Defendant White. He argues that Plaintiffs have not made sufficient allegations to sustain a claim against him. (Doc. 16 at 13–14). The Court agrees.

"To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify 'a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law.'" *Miller v. Roberts*, No. 2:09-CV-00240, 2009 WL 10710389, at *2 (S.D. Ohio Nov. 30, 2009) (quoting *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994)). To do so, "'the plaintiff must allege some personal involvement by each of the named defendants.'" *Miller*, 2019 WL 10710389, at *2 (quoting *Bennett v. Schroeder*, 99 F. App'x 707, 712–13 (6th Cir. 2004)).

Plaintiffs' allegations against Defendant White do not meet this basic requirement. Plaintiffs' allegations against him have always been thin. (*See* Doc. 3). But they have become even more sparse in the Second Amended Complaint as they no longer allege that Defendant White damaged their vehicle. (*See* Doc. 11-1). This leaves only an allegation that Defendant White searched Plaintiffs' vehicle at the garage. (Doc. 11-1, ¶ 30). But Plaintiffs do not allege that Defendant White was present for or otherwise involved in the traffic stop or dog sniff. Nor do they allege that he was aware of these events. Without more, a general allegation that Defendant White unlawfully searched and seized Plaintiffs does not "allege with particularity[] [ ] what [Defendant White] did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (citation omitted). While Plaintiffs have stated plausible Fourth Amendment claims against Defendants Coverstone and Weeks, "we cannot ascribe the acts of all Defendants to each individual defendant." *Id.* (citation omitted).

In sum, Plaintiffs have failed to state a claim against Defendant White.  Consequently, Defendants' Motion to Dismiss Plaintiffs' claims against him is **GRANTED**, and Defendant White is **DISMISSED without prejudice** from this case.  Should Plaintiffs uncover additional facts regarding Defendant White's involvement in the alleged unconstitutional conduct, the Court will consider them on a subsequent motion for leave to amend.

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 11) is **GRANTED**.  Accordingly, Defendants' Motion to Dismiss (Doc. 8) is **DENIED without prejudice as moot**.  Further, Defendants' opposition to Plaintiffs' Motion for Leave to Amend (Doc. 16), which the Court has construed as a Motion to Dismiss, is **GRANTED in part** and **DENIED in part**.  Specifically, the Motion is **GRANTED** as to Defendant Jerad White, and the claims against him are **DISMISSED without prejudice**.  The Motion is otherwise **DENIED**.  Within fourteen (14) days, Plaintiffs are **ORDERED** to file a proposed third amended complaint consistent with this Opinion and Order and without claims against Defendant White, who has been dismissed without prejudice.

Finally, the discovery stay is **LIFTED**, and the parties are **DIRECTED** to meet and confer and submit a proposed scheduling order within fourteen (14) days.

IT IS SO ORDERED.


Date:  May 21, 2020                               /s/ Kimberly A. Jolson
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE